___

**SO ORDERED,**

*[signature]*

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: August 24, 2018**

The Order of the Court is set forth below. The docket reflects the date entered.
___

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

   ELENA QUACKENBUSH,                                              CASE NO. 16-00044-NPO

   DEBTOR.                                                              CHAPTER 7

ELENA QUACKENBUSH                                             PLAINTIFF

VS.                                                                          ADV. PROC. NO. 17-00059-NPO

U.S. DEPARTMENT OF EDUCATION                           DEFENDANT

### MEMORANDUM OPINION AND ORDER
### ON U.S. DEPARTMENT OF EDUCATION'S MOTION FOR SUMMARY JUDGMENT

There came on for consideration the U.S. Department of Education's Motion for Summary Judgment (the "Summary Judgment Motion") (Adv. Dkt. 27)[1] filed by the U.S. Department of Education (the "DoE") and the U.S. Department of Education's Memorandum in Support of Motion for Summary Judgment (the "Summary Judgment Brief") (Adv. Dkt. 28) filed by the DoE. The debtor, Elena Quackenbush (the "Debtor" or "Plaintiff"), acting without the assistance of counsel (*pro se*), did not file a response to the Summary Judgment Motion. In support of its

---

[1] Citations to the record are as follows: (1) citations to docket entries in the above-styled adversary proceeding (the "Adversary") are cited as "(Adv. Dkt. ____)"; and (2) citations to docket entries in the above-styled bankruptcy case (the "Bankruptcy Case") are cited as "(Bankr. Dkt. ____)".

Summary Judgment Motion, the DoE presented two (2) exhibits marked as Exhibits "1" and "2." (Adv. Dkt. 27-1 & 27-2).

## Jurisdiction

The Court finds that it has jurisdiction over the parties to and has subject matter jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Notice of the Summary Judgment Motion was proper under the circumstances.

## Facts[2]

1. On January 7, 2016, the Debtor filed a petition for relief under chapter 7 of the U.S. Bankruptcy Code (the "Code") (Bankr. Dkt. 1).

2. On May 17, 2016, the Court entered the Order of Discharge (Bankr. Dkt. 31) and the Final Decree/Order Closing Case (Bankr. Dkt. 32) in the Bankruptcy Case.

3. On August 28, 2017, the Debtor filed the Motion to Reopen Bankruptcy Case "to receive relief from the student loan under § 523(a)(8)(B)." (Bankr. Dkt. 35).

4. On October 4, 2017, the Court entered the Order Granting Re-Opening the Bankruptcy Case (Bankr. Dkt. 42).

5. On October 12, 2017, the Debtor filed the Adversary Proceeding Complaint (the "Complaint"), naming "Great Lakes Financial Services" ("Great Lakes") as the defendant and seeking a "[d]ischarge of student loan, as it will impose an undue hardship on the debtor and debtor's dependents." (Adv. Dkt. 1).

---

[2] Pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable to the Adversary by Rule 7052 of the Federal Rules of Bankruptcy Procedure, the following constitutes the findings of fact and conclusions of law of the Court.

6.　　On October 26, 2017, Great Lakes mailed a letter to the Clerk of Court for the U.S. Bankruptcy Court of the Southern District of Mississippi (the "Clerk of Court"), asserting that it is an improper party to the Adversary because it does not own the Debtor's student loans. (Adv. Dkt. 4).

7.　　After holding a status conference on January 17, 2018, the Court issued the Order directing the Debtor to amend the Complaint within fourteen (14) days. (Adv. Dkt. 7).

8.　　On January 31, 2018, the Debtor filed the Adversary Proceeding Complaint (Amended) (the "Amended Complaint"), naming the DoE and Great Lakes as defendants and seeking a "[d]ischarge of student loan, as it will impose an undue hardship on the debtor and debtor's dependents." (Adv. Dkt. 10 & 11).

9.　　On March 7, 2018, the DoE filed the Department of Education's Answer to Plaintiff's Adversary Proceeding Complaint (Amended) [Dkt. #11] (the "Answer"), asserting the following affirmative defenses: (1) that "[t]he [Amended] Complaint fails to state a claim upon which relief can be granted"; (2) that "Plaintiff failed to exhaust her administrative remedies by first seeking an administrative discharge of her student loans"; (3) that "Plaintiff failed to make a good faith effort to repay her student loans"; and (4) that "Plaintiff failed to apply for an 'Income Contingent Repayment Plan' or an 'Income Base Repayment' for any of her loans." (Adv. Dkt. 14).

10.　　On March 21, 2018, the Debtor filed Plaintiff's Response to Affirmative Defenses of Department of Education (the "Reply") (Adv. Dkt. 18 & 19),[3] asserting: (1) that relief can be granted pursuant to 11 U.S.C. § 523(a)(8); (2) that "[t]he Plaintiff could not seek administrative discharges as the Plaintiff's situation does not fall under the categories qualifying for

---

[3] Adv. Dkt. 18 & 19 are identical, except that Adv. Dkt. 19 contains additional attachments.

administrative discharges . . . [e.g., school closure, false certification, unpaid tuition refund, disability discharge, public service discharge, and victims of 9/11]"; (3) that "Plaintiff did not have means to pay, it does not have anything to do with making efforts in good faith . . . [I]n 2002, Plaintiff had loans originated with DoE with the purpose of going to the Mississippi College, and those loans were paid off"; (4) that "[P]laintiff could not apply for an 'Income Contingent Repayment Plan' or an 'Income Base Repayment' as she did not have any income and has been a recipient of Unemployment (2013-2014) and SNAP benefits (formerly known as Food Stamps) for 5 (five) years." (Adv. Dkt. 18). The Debtor maintained her request for the discharge of her student loans because "repaying the loans out of food stamps (currently $151.00) and child support (currently $724.30) would impose an undue hardship on the Plaintiff and her dependents." (*Id.*)

11. On April 3, 2018, Great Lakes, again, mailed a letter to the Clerk of Court, asserting that it is an improper party to the Adversary because it does not own the Debtor's student loans. (Adv. Dkt. 20).

12. On June 21, 2018, the Debtor filed the Motion to Drop Great Lake [*sic*] Financial Services as Defendant. (Adv. Dkt. 21). On June 28, 2018, the Court issued the Order Granting Motion to Drop Great Lake Financial Services as Defendant. (Adv. Dkt. 23).

13. On July 12, 2018, the DoE filed the Summary Judgment Motion, asserting that it "is entitled to summary judgment because the Plaintiff cannot meet the undue hardship requirement in 11 U.S.C. § 523(a)(8) and the interpretation of that section by *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987)." (Adv. Dkt. 27). In support of the Summary Judgment Motion, the DoE submitted the Certificate of Indebtedness #1 of 1 (the "Certificate of Indebtedness") (Ex. 1), the Declaration of Cristin Caitlin O'Keefe (the "Declaration") (Ex. 2), and the Summary Judgment Brief.

14. The Debtor did not file a response to the Summary Judgment Motion.

## Discussion

**A.   Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure, as made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Courts do not disfavor summary judgment, but, rather, look upon it as an important process through which parties can obtain a "just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citations and quotations omitted). Summary judgment is properly entered when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c)(1)(A); *see also Celotex*, 477 U.S. at 322.

The movant bears the initial burden of proof to specify the basis upon which the Court should grant summary judgment and to identify portions of the record that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1); *see also Celotex*, 477 U.S. at 322. The movant is entitled to the benefit of any relevant presumption under state law to satisfy the initial burden of proof. Once the initial burden is met, the burden of production shifts to the nonmovant who then must rebut the presumption by coming forward with specific facts, supported by the evidence in the record, upon which a reasonable factfinder could find a genuine fact issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Importantly, "conclusory allegations" or "unsubstantiated assertions" do not meet the nonmovant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 399 (5th Cir. 2008). Summary

judgment should be granted where the nonmovant "has failed to make a sufficient showing on an essential element of [the] case with respect to which [the party] has the burden of proof." *Celotex*, 477 U.S. at 323.

In the absence of any proof, the Court will not assume that the nonmovant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Indeed, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the [bankruptcy] court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

**B.     Dischargeability Under § 523(a)(8) & the *Brunner* Test**

Section 523(a)(8) of the Code governs the dischargeability of student loans and provides:

(a)     A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

> (8)     unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
>
>> (A)(i)  an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>>
>>> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>>
>> (B)     any other educational loan that is a qualified educational loan . . . incurred by a debtor who is an individual[.]

11 U.S.C. § 523(a)(8).[4] The Fifth Circuit Court of Appeals has adopted the test set forth in *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987), to determine whether excepting student loan debt from discharge would impose an undue hardship on the debtor and the

---

[4] Hereinafter, all code sections refer to the Code found at Title 11 of the U.S. Code, unless otherwise noted.

debtor's dependents. *See U.S. Dep't of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89, 91 (5th Cir. 2003). The *Brunner* test requires a debtor seeking to discharge student loans to show the following:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396. "If the debtor fails to prove even one of these [factors], the inquiry ends and the student loan[s] cannot be discharged." *Salyer v. Sallie Mae Servicing Corp. (In re Salyer)*, 348 B.R. 66, 70 (Bankr. M.D. La. 2006). The Court will address each factor in turn.

### 1. Minimal Standard of Living

The first factor of the *Brunner* test requires a debtor to prove that she cannot maintain a minimal standard of living for herself or her dependents if forced to repay the student loans. *See Brunner*, 831 F.2d at 396. A debtor "cannot satisfy this test 'merely because repayment of the [student loans] would require some major personal or financial sacrifices.'" *In re Salyer*, 348 B.R. at 71 (quoting *Pa. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 306 (3d Cir. 1995)). Instead, a debtor "must show that her financial resources will allow her to live only at a poverty level standard for the foreseeable future if she is obligated to repay the student loan[s]." *Knox v. Sallie Mae (In re Knox)*, Adv. Proc. No. 060060-EE, 2007 WL 3332060, at *3 (Bankr. S.D. Miss. Nov. 6, 2007) (quoting *Cadle Co. v. Webb (In re Webb)*, 132 B.R. 199, 202 (Bankr. M.D. Fla. 1991)). Importantly, however, the Code "does not require that the debtor live in abject poverty before a student loan may be discharged." *O'Donohoe v. Panhandle-Plains Higher Educ. Auth. (In re O'Donohoe)*, Adv. Proc. No. 12-03281, 2013 WL 2905275, at *3 (Bankr. S.D. Tex. June 13, 2013) (internal quotations omitted). To calculate the "minimal standard of living,"

bankruptcy courts in the Northern and Southern Districts of Mississippi "determine what amount is minimally necessary to ensure that the debtor's needs for care, including food, shelter, clothing, and medical treatment, are met." *Wynn v. Educ. Credit Mgmt. Corp. (In re Wynn)*, 378 B.R. 140, 148 (Bankr. S.D. Miss. 2007) (quoting *Gill v. Nelnet Loan Servs., Inc. (In re Gill)*, 326 B.R. 611, 626 (Bankr. E.D. Va. 2005)); *see Justice v. Educ. Credit Mgmt. Corp. (In re Justice)*, Adv. Proc. No. 15-01083-JDW, 2016 WL 6956642, at *3 (Bankr. N.D. Miss. Nov. 28, 2016); *In re Knox*, 2007 WL 3332060, at *3. Then, courts determine "whether the debtor has additional funds with which to make payments toward [her] student loans." *Id.* Finally, the debtor also must demonstrate "that he or she is attempting to 'minimize living expenses and maximize financial resources.'" *In re Justice*, 2016 WL 6956642, at *4 (quoting *In re Webb*, 132 B.R. at 202).

While the Debtor did not respond to the Summary Judgment Motion, the DoE notes in its Summary Judgment Brief that the Debtor "claims both her mentally disabled daughter and her mother as dependents." (Adv. Dkt. 28). Thus, "[t]o determine whether the [d]ebtor can maintain a minimal standard of living for *[her]self* and *[her] dependents*, the [c]ourt . . . must examine . . . 'total household income.'" *In re Wynn*, 378 B.R. at 147-48 (quoting *Davis v. Educ. Credit Mgmt. Corp. (In re Davis)*, 373 B.R. 241, 248 (W.D.N.Y. 2007)); *see Rice v. United States (In re Rice)*, 78 F.3d 1144, 1150 (6th Cir. 1996) ("If the debtor has dependents, the court should consider whether they are, or could be, contributing financially to their own support."). The DoE further asserts that the Debtor "has not disclosed whether (1) her daughter still receives Social Security disability payments, or (2) whether her mother receives any social security income." (Adv. Dkt. 28). Because these figures are relevant in determining whether the Debtor can afford to repay the student loans, the DoE does not dispute, for purposes of the Summary Judgment Motion, that the

Debtor meets this factor. Thus, the Court finds that the Debtor satisfies the first factor of the *Brunner* test.

### 2. Persisting State of Affairs

The second factor, and "the heart" of the *Brunner* test, requires a debtor to prove "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." *Brunner*, 831 F.2d at 396; *see Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 401 (4th Cir. 2005). These "additional circumstances" include "circumstances that impacted on the debtor's future earning potential but which [were] either not present when the debtor[ ] applied for the loans or [have] since been exacerbated." *In re Gerhardt*, 348 F.3d at 92 (internal quotations and citation omitted). This factor "is 'a demanding requirement' . . . [because] proving that the debtor is 'currently in financial straits' is not enough." *In re Gerhardt*, 348 F.3d at 92 (quoting *Brightful v. Pa Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 328 (3d Cir. 2001)). Rather, "the debtor must specifically prove 'a total incapacity . . . in the future to pay [her] debts for reasons not within [her] control.'" *In re Gerhardt*, 348 F.3d at 92 (citing *In re Faish*, 72 F.3d at 307) (quoting *Rappaport v. Orange Sav. Bank (In re Rappaport)*, 16 B.R. 615, 617 (Bankr. D.N.J. 1981)); *see also Briscoe v. Bank of N.Y. (In re Briscoe)*, 16 B.R. 128, 131 (Bankr. S.D.N.Y. 1981) ("[T]he dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment."). A court should examine a debtor's "age, education, work history, health, assets, ability to obtain a higher paying job or reduce expenses, and other circumstances" in determining whether a "debtor's financial situation is likely to improve." *Educ. Credit Mgmt. Corp. v. Pratt (In re Pratt)*, 375 B.R. 753, 761 (S.D. Tex. 2007); *In re Justice*, 2016 WL 6956642, at *5.

In the Summary Judgment Brief, the DoE argues that the Debtor cannot show that her current state of affairs is likely to persist "for a significant portion of the repayment period of the student loans." (Adv. Dkt. 28). Again, while the Debtor did not respond to the Summary Judgment Motion, the Debtor did file the Reply to the Answer, and the DoE refers to the Reply in the Summary Judgment Brief. More specifically, the DoE notes that while the Debtor disclosed that she received unemployment benefits only during the 2013-2014 period, the Debtor has been unemployed since that time. (*Id.*) Additionally, the Debtor attached to the Reply a screenshot of her e-mail account showing that she applied to job postings during the timeframe of October 24, 2016 and January 18, 2018. (Adv. Dkt. 19 at 25-27). The DoE, however, argues that the Debtor's e-mail account detailing her job application statuses "is not sufficient to show that she is incapable of obtaining employment, at least part-time, doing something." (Adv. Dkt. 28).

While the Court recognizes that the Debtor is "a single mother [and] caregiver for [her] disabled daughter, who has Down [s]yndrome," the Debtor has not provided to the Court evidence that her unemployment will persist in the future. (Adv. Dkt. 11). While the Debtor lost her job as a financial analyst in 2009 "and, no matter how [she] tried, could not find a job that would match [her] qualification," she also acknowledged that she has "held a couple of part time jobs" since that time. (*Id.*) Indeed, "nothing in the Bankruptcy Code suggests that a debtor may choose to work only in the field in which [s]he was trained, obtain a low-paying job, and then claim that it would be an undue hardship to repay h[er] student loans." *In re Gerhardt*, 348 F.3d at 92. Accordingly, the Court finds that the second factor of the *Brunner* test has not been satisfied. Since the Debtor has failed to carry her burden under the second factor of the *Brunner* test, it is unnecessary for the Court to address the remaining factor. Nonetheless, the Court will analyze the third factor as well.

### 3. Good Faith Effort to Repay Student Loans

The third factor of the *Brunner* test requires a debtor to prove "that [she] has made good faith efforts to repay the [student] loans." *Brunner*, 831 F.2d at 396. The court must "consider the [d]ebtor's 'efforts to obtain employment, maximize income, and minimize expenses.'" *Russ v. Tex. Guaranteed Student Loan Corp. (In re Russ)*, 365 B.R. 640, 645 (Bankr. N.D. Tex. 2007) (quoting *In re Frushour*, 433 F.3d at 402). In sum, "good faith 'encompasses a notion that the debtor may not willfully or negligently cause her own default, but rather her condition must result from factors beyond her reasonable control.'" *In re Knox*, 2007 WL 3332060, at *5 (quoting *McMullin v. U.S. Dep't of Educ. (In re McMullin)*, 316 B.R. 70, 78 (Bankr. E.D. La. 2004)). While not dispositive, "[t]he steps taken by a debtor to repay the student loan debt prior to the bankruptcy are also highly relevant to the good faith analysis." *In re Russ*, 365 B.R. at 646. Finally, "[a] debtor's effort to seek out loan consolidation options that make the debt less onerous is an important indicator of good faith." *In re Salyer*, 348 B.R. at 72; *see also In re Frushour*, 433 F.3d at 402 ("Although not always dispositive, it illustrates that the debtor takes her loan obligations seriously, and is doing her utmost to repay them despite her unfortunate circumstances.").

In the Summary Judgment Brief, the DoE argues that the Debtor cannot show that she has made good faith efforts to repay her student loans. (Adv. Dkt. 28). Pursuant to the Certificate of Indebtedness (Ex. 1) attached to the Summary Judgment Motion (Adv. Dkt. 27), the Debtor, as of October 25, 2017, "owes the unpaid principal of $30,809.00 and unpaid accrued interest of $7,760.30." *Id.* Additionally, the DoE's "[r]ecords show that $0.00 in payments has been credited

to the account." *Id.* Thus, the Debtor did not make any student loan payments before filing for bankruptcy relief.[5]

In the Declaration (Ex. 2), Cristin Caitlin O'Keefe ("O'Keefe"), a Loan Analyst in Litigation Support with the DoE, notes that the Debtor asserted in her Reply that she "could not apply for an 'Income Contingent Repayment Plan' or an 'Income Base Repayment' as she did not have any income and has been a recipient of Unemployment (2013-2014) and SNAP benefits (formerly known as Food Stamps) for 5 (five) years." (Adv. Dkt. 18 & 27). O'Keefe, however, argues that the Debtor is eligible to pay her student loans under the income-based repayment plan ("IBR"). Under IBR, "[t]he borrower's aggregate monthly [student] loan payments [would be] limited to no more than 15 percent . . . of the amount by which the borrower's [adjusted gross income] exceeds 150 percent of the poverty guideline applicable to the borrower's family size, divided by 12." 34 C.F.R. § 685.221(b)(1). If the "borrower's income is less than 150 percent of the poverty line . . . qualified payments would be calculated as $0.00 per month for up to a 25-year repayment period." (Ex. 2); *see also* 34 C.F.R. § 685.221(b). When "a borrower has made the equivalent of 25 years of payments . . . any remaining balance owed on the [student] loans would be forgiven." (Ex. 2); *see also* 34 C.F.R. § 685.221(f)(1)(i). Importantly, however, the borrower

---

[5] In the Amended Complaint, the Debtor asserts that her student loans originated in 2009 and 2010 and have been in deferment since 2011. (Adv. Dkt. 11).

Page 12 of 15

must participate in IBR and satisfy the repayment terms through qualified monthly payments, "including approved economic hardship deferments," to qualify for student loan forgiveness.[6] *Id.*

Here, the DoE notes that the Debtor admits in her Reply that she has not applied for IBR. (Adv. Dkt. 18 & 28). If the Debtor had applied for IBR, "she would be in a $0.00 repayment status." (Adv. Dkt. 28). Thus, the DoE argues that the Debtor's "failure to [apply for IBR] should preclude granting the relief she seeks to discharge her student loan debt." (*Id.*) Having received no evidence to the contrary, the Court finds that the Debtor has not shown that she made a good faith effort to repay her student loans. *See In re Justice*, 2016 WL 6956642, at *5 (finding that the debtor failed to make a good faith effort to repay his student loans when he "sought and obtained numerous deferments and forbearances, but . . . never attempted repayment or sought a solution to ease the burden in a lasting way [such as by pursuing a repayment program]"); *In re Wynn*, 378

---

[6] Despite the foregoing, the Court acknowledges that income-driven repayment ("IDR") programs, such as IBR, may impose potential tax liability on any amount of the student loan forgiven after the repayment period. *See* John Patrick Hunt, *Help or Hardship?: Income-Driven Repayment in Student-Loan Bankruptcies*, 106 GEO. L.J. 1287, 1341-42 (2018) ("IDR programs provide for cancellation of indebtedness if the debtor still owes money after making payments for a specified period. Depending on the program, the period may be ten, twenty, or twenty-five years. This debt cancellation may have tax-consequences. The typical tax rule for all types of loans, including student loans, is that when a taxpayer's debt is cancelled other than through bankruptcy, the taxpayer recognizes income equal to the amount of the cancelled debt, and this income is subject to tax. . . . An exception to the cancellation-of-indebtedness tax rule applies if the taxpayer is insolvent. The cancellation-of-indebtedness income is reduced by the amount of the taxpayer's insolvency immediately before the cancellation. The 'amount of insolvency' here is defined as the fair market value of the taxpayer's assets minus the taxpayer's liabilities. The IRS gives the following example of the insolvency exception: if immediately before the cancellation a taxpayer has total liabilities of $10,000 and the fair market value of her assets is $7,000, then the taxpayer is insolvent in the amount of $3,000. If a credit-card lender forgives $5,000 of this taxpayer's debt, then the $5,000 in cancellation-of-indebtedness income is reduced by the $3,000 amount of insolvency, so the taxpayer would recognize $2,000 of cancellation-of-indebtedness income.") (footnotes omitted). With respect to the potential tax consequences associated with student loan forgiveness, one district court found "that forecasting such tax liability under whatever tax laws will be in effect in 25 years is sheer speculation. Further, forecasting the effect any such liability would have on [the] [d]ebtor's actual standard of living at that time would be even more speculative." *Jones v. Bank One Tex.*, 376 B.R. 130, 142 n.11 (W.D. Tex. 2007).

B.R. at 150 (finding that the debtor did not satisfy the third factor of the *Brunner* test when "there [was] no evidence that the [d]ebtor attempted to take advantage of any of the repayment programs . . . offered to borrowers who are unable to meet their contractual obligations on their student loan[s] . . . [and instead] obtained either deferments or forbearances of his payments"). Accordingly, the DoE is entitled to summary judgment as a matter of law that the student loans are nondischargeable under § 523(a)(8).

## Conclusion

Section 523(a)(8) "commits the student to repayment regardless of his or her subsequent economic circumstances. In return for giving aid to individuals who represent poor credit risks, [the government] strips these individuals of the refuge of bankruptcy in all but extreme circumstances." *Brunner*, 46 B.R. at 756. As a result, "each student individually [must] decide whether the risks of future hardship outweigh the potential benefits of a deferred-payment education." *Id.* While the Court is sympathetic to the Debtor's situation, her hardships are not "undue" as required under § 523(a)(8). Once a summary judgment movant presents sufficient, competent evidence to entitle it to summary judgment as a matter of law, the nonmovant cannot rest merely on bare allegations in its pleadings, but must set forth specific facts demonstrating a genuine issue for trial. *Hawking v. Ford Motor Credit Co.*, 210 F.3d 540, 545 (5th Cir. 2000). Here, the Debtor did not file a response to the Summary Judgment Motion and, thus, "failed to make a sufficient showing on [the] essential element[s] of her case with respect to which she had the burden of proof." *Celotex*, 477 U.S. at 323. More specifically, the Debtor has failed to produce any evidence to show that she cannot secure at least part-time employment in any profession and that she has made a good faith effort to repay her student loans. The Court, therefore, finds that the DoE is entitled to summary judgment as a matter of law that the student loans are

nondischargeable under § 523(a)(8). The Court will issue a separate final judgment dismissing the Adversary with prejudice.

##END OF OPINION##